CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

5/30/2025
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| CURTIS M. WHATELEY,<br>　　　　　　　　　　*Plaintiff,*<br><br>　　　　v.<br><br>GERALD F. LACKEY,<br>　*in his official capacity as the*<br>COMMISSIONER OF VIRGINIA<br>DEPARTMENT OF MOTOR VEHICLES,<br><br>　　　　　　　　　　*Defendant.* | CASE NO. 6:25-cv-00010<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Curtis Whateley brings this *pro se* civil rights action against the Commissioner of the Virginia Department of Motor Vehicles (DMV), Gerald F. Lackey, alleging that the Commissioner revoked his personalized license plate in violation of his First and Fourteenth Amendment rights. The license plate read "FTP&ATF," which Plaintiff acknowledges stood for "Fuck the police & [the Bureau of] Alcohol, Tobacco, and Firearms." Although DMV initially approved and issued the plate, the Commissioner later determined that the plate was offensive and invoked his authority under Virginia Code § 46.2-726 to prohibit its use. Based on these actions, Plaintiff now seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, claiming that:

(i)　Virginia Code § 46.2-726 is facially unconstitutional under the First Amendment because it is vague and overbroad;

(ii)　the statute is unconstitutional as applied to Plaintiff, because it discriminates based upon viewpoint and restricts his pure political speech regarding "the current state of policing in this country;" and

  (iii)  the Commissioner's decision to revoke his license plate provided insufficient process under the Fourteenth Amendment's guarantee of procedural due process.

*See* Dkt. 01. The Commissioner moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 07 (motion); Dkt. 08 (mem. in support).

  Upon review of the filings and the applicable law, the Court concludes that the motion shall be **GRANTED**. Because Plaintiff's license plate amounts to an object of government speech, he neither has a First Amendment interest nor a Due Process interest at stake in this case.

## I. Legal Standard

  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

  Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

## II. Background

In early 2023, Plaintiff "requested a personalized license plate" from DMV which read "FTP&ATF." Dkt. 01 at 5. The plate was approved and issued to Plaintiff, and it was later re-issued when Plaintiff and DMV discovered that the "&" symbol had been erroneously omitted. *Id.* Plaintiff received the re-issued plates and began displaying them on his vehicle. *Id.* He used them for roughly one year. *Id.*

In May 2024, DMV received a complaint about the license plate. A citizen claimed over email that the license plate was "most offensive" because "the F stands for Fuck and the plate means Fuck the Police & the [Bureau of] Alcohol, Tobacco, and Firearms." Dkt. 01 at 5. DMV's "Personalized License Plate Review Board" voted 9-1 to recall the license plate, as they believed "it could reasonably be viewed as profane, obscene, or vulgar" and because it could be used to condone or encourage violence. *Id*. Plaintiff received notice of DMV's decision in the mail, along with a new set of randomized plates, which he began to use immediately. *Id*.

Plaintiff then sought an "Informal Administrative Hearing" on the matter. Dkt. 01 at 5. After some delay by DMV, a hearing was scheduled. *Id*. at 5-6. Plaintiff represented himself at the hearing. *Id*. at 6. One month later, Plaintiff received notice of "the Informal Conference Decision upholding the revocation" of his license plate. *Id*.

## III. Discussion

Plaintiff brings three claims. First, Plaintiff argues that Virginia Code § 46.2-726 is facially unconstitutional for overbreadth and vagueness, because it "grants unfettered discretion to the Commissioner on matters of content and viewpoint expression." Dkt. 01 at 4. Second,

3

Plaintiff argues that the statute is unconstitutional as applied to him because it is viewpoint discriminatory and restricts "categories of protected [speech] including political" speech. *Id*. Finally, Plaintiff argues that revocation of his license plate violated his Fourteenth Amendment right to due process. *Id*. at 3.

The Commissioner argues that all claims must be dismissed because Plaintiff fails the pleading standards of Rule 12(b)(6) or misapprehends the applicable Constitutional law. *See* Dkt. 08. Among Commissioner's substantive arguments, one takes priority: whether vanity plates in the Commonwealth of Virginia constitute government speech. The Commissioner argues that because the Commonwealth's vanity plates constitute government speech, Plaintiff has no First Amendment right to expression on his vanity plate, and his free speech claims must therefore fail. If Plaintiff has no First Amendment interest, the Commissioner argues, then he also has no liberty interest protected by the Due Process clause, such that his Fourteenth Amendment claim must also fail. Accordingly, the government speech question is a threshold determination which we address first.

A. Government Speech

The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech," U.S. CONST. amend. I, but the First Amendment's guarantee of free speech does not apply when the government is speaking for itself. *See, e.g., Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."). **To assess whether speech is government speech, we conduct "a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression."** *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022). This review "is not

4

mechanical" and instead "is driven by a case's context rather than the rote application of rigid factors." *Id*. Nonetheless, past cases have looked consistently to three factors which guide the government speech inquiry: (1) "the history of the expression at issue;" (2) "the public's likely perception as to who (the government or a private person) is speaking;" and (3) "the extent to which the government has actively shaped or controlled the expression." *Shurtleff*, 596 U.S. at 252 (citing *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 209-14 (2015)). In *Walker*, the Supreme Court applied these factors in holding that **specialty license plates** issued by the state of Texas, pursuant to its statutory registration of motor vehicles, constituted government speech, such that the plaintiffs in that case (the Sons of Confederate Veterans) had no First Amendment right to display the Confederate flag on the specialty plates issued on their behalf. *Walker*, 576 U.S. at 208-14.

Following *Walker*, courts in the Fourth Circuit have held that North Carolina's and Virginia's specialty plate programs are forms of government speech not subject to First Amendment scrutiny. *See, e.g., ACLU v. Tennyson*, 815 F.3d 183, 185 (4th Cir. 2016) (holding that, per *Walker*, North Carolina's specialty plate program is government speech not subject to First Amendment scrutiny); *Sons of Confederate Veterans, Inc. v. Holcomb*, 2015 WL 4662435, at *4 (W.D. Va. Aug. 6, 2015) (holding that, per *Walker*, Virginia's specialty license plate program is government speech). However, *Walker* only considered "specialty plates," *i.e.*, plates which bear a design other than the state's default plate, often issued on behalf of a certain cause or organization, like wildlife conservation or Confederate veterans. It specifically did not address vanity plates, *i.e.*, plates bearing a personalized series of alphanumeric characters. *See Walker*, 576 U.S. at 204 ("Finally, Texas law provides for personalized plates (also known as vanity plates) . . . . Pursuant to the personalization program, a vehicle owner may request a particular

5

alphanumeric pattern for use as a plate number, such as 'BOB' or 'TEXPL8.' Here we are concerned only with the second category of plates, namely specialty license plates, not with the personalization program.") (internal citations omitted).

Thus, how *Walker* applies to vanity plates is an open question. Courts across the country are split. At least three courts have held that vanity plates are government speech. *See Gilliam v. Gerregano*, 2025 WL 617603, at *12 (Tenn. Feb. 26, 2025) ("personalized alphanumeric combinations on Tennessee's license plates are government speech"); *Comm'r of Ind. Bureau of Motor Vehicles v. Vawter*, 45 N.E.3d 1200, 1204–05 (Ind. 2015); *Odquina v. City & Cnty. of Honolulu*, 2022 WL 16715714, at *9 (D. Haw. Nov. 4, 2022), *aff'd on other grounds*, 2023 WL 4234232 (9th Cir. June 28, 2023).

Meanwhile, at least six courts have held that vanity plates are private speech. *See Kotler v. Webb*, 2019 WL 4635168, at *7 (C.D. Cal. Aug. 29, 2019); *Mitchell v. Md. Motor Vehicle Admin.*, 450 Md. 282, 148 A.3d 319, 325-26 (Md. 2016), *as corrected on reconsideration* (Dec. 6, 2016); *Overington v. Fisher*, 733 F. Supp. 3d 339, 343 (D. Del. 2024); *Ogilvie v. Gordon*, 2020 WL 10963944, at *5 (N.D. Cal. July 8, 2020); *Carroll v. Craddock*, 494 F. Supp. 3d 158, 166 (D.R.I. 2020); *Hart v. Thomas*, 422 F. Supp. 3d 1227, 1233 (E.D. Ky. 2019).

Accordingly, the majority of courts to address the issue have found that vanity plates are private speech. But, while instructive, none of these decisions are binding authority; and since *Walker* contemplates state-specific factors, court decisions in other states do not necessarily bear on the same question arising in the Commonwealth of Virginia. Thus, our analysis below employs the *Walker* factors as the guiding framework, while we remain mindful that our decision must be driven by our "case's context." *Shurtleff*, 596 U.S. at 252.

### 1. History of the Expression at Issue

The first *Walker* factor instructs us to consider both the general history of license plates and the specific history of vanity plates as used in the Commonwealth of Virginia.[1] The Commissioner has not introduced much in the way of historical at this stage of litigation. But considering what has been submitted, we find that the history and current practice of the Commonwealth's use of vanity plates suggest that its vanity plates are government speech.

At a general level, Virginia's license plates allow the "public, administrative agencies, and law enforcement" to achieve various purposes, such as "regulation of vehicles, taxes, law enforcement actions[,] and tolls." Dkt. 08 at 15. Virginia's license plates "remain the property" of the Commonwealth and are "subject to [being] revoked, cancelled, and repossessed" at any time according to law. Va. Code § 46.2-713. Virginia's license plates are therefore properly viewed as government-issued and government-owned decals. Attached to privately owned vehicles, these government decals serve a governmental purpose and communicate a governmental message: <u>this vehicle is registered with the state</u>.

As to vanity plates, specifically, the fact that a person can customize the unique series of characters that make up the government's message does not change the message's general meaning. Furthermore, vanity plates in the Commonwealth operate "as a revenue generator for the DMV[,] as each personalized plate costs the customer an extra $10 fee that is maintained in a

---

[1] In *Walker*, for instance, the Supreme Court considered the general history of license plates, as well as the use of specialty plates by Texas. *Walker*, 576 U.S. at 210-11 ("[T]he history of license plates shows that, insofar as license plates have conveyed more than state names and vehicle identification numbers, they long have communicated messages from the States . . . . Texas, too, has selected various messages to communicate through its license plate designs. By 1919, Texas had begun to display the Lone Star emblem on its plates."). In *Summum*, too, the Court considered how governments have used monuments to speak to the public throughout history, as well as the particular history of Pleasant Grove City's use of monuments in that case. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470-73 (2009) ("Governments have long used monuments to speak to the public . . . . The City has selected those monuments that it wants to display for the purpose of presenting the image of the City that it wishes to project to all who frequent the Park.").

fund for the operation of the department." Dkt. 08 at 15. The program has existed for over 50 years. Dkt. 08 at 15 (citing Va. Code § 46.2-726). The Commissioner has discretion in issuing or revoking vanity plates, *see* Va. Code § 46.2-726, discussed *infra*, and the plates remain the property of the Commonwealth like any other non-customized license plate.

Accordingly, although vanity plates are a distinct subset of the Commonwealth's license plate program, all of the usual characteristics of the state's license plates apply: the plates are government property issued for a governmental purpose: registering vehicles. Customization of the plates is merely an opportunity to raise government revenue while still achieving that primary purpose. While the government's purpose or message in this case is not as archetypically 'expressive' as, say, a government's use of monuments or flags to convey a certain message (the speech at issue in *Summum* and *Shurtleff*), the Commonwealth's vanity plate program still falls on the side of "the government intend[ing] to speak for itself," rather than the government seeking to "regulate private expression." *Shurtleff*, 596 U.S. at 252. License plates are the government saying "this car is registered," vanity plate or not. Private expression does not take the wheel merely because a private individual gets to choose the specific characters that make up the message. As the Commissioner argues, the vanity plate program was not created to provide "individuals a means of expression," and "[a]ny messages displayed" through vanity plates "are merely secondary to the government's message and purpose" of identifying vehicles and raising revenue. Dkt. 08 at 15. We conclude that where the speech starts and ends with a governmental purpose and message, the first *Walker* factor weighs in favor of finding that the Commonwealth's vanity plate program constitutes government speech.

2. **Public Perception of Who is Speaking**

Next, we consider "the public's likely perception as to who (the government or a private

person) is speaking" vis-à-vis the Commonwealth's vanity plates. *Shurtleff*, 596 U.S. at 252 (citing *Walker*, 576 U.S. at 209-13.) Again, the Commissioner has not introduced record evidence on this factor at the motion to dismiss stage. However, *Walker*'s analysis on this factor is particularly illustrative and in fact minimizes the need for record evidence of the "public's likely perception."

Namely, the Supreme Court in *Walker* (although dealing with specialty plates, not vanity plates), heavily emphasized that license plates <u>in general</u> are "essentially, government IDs," such that all license plates must be "closely identified in the public mind with the State." *Walker*, 576 U.S. at 212 (quoting *Summum*, 555 U.S. at 472). The Court saw no need to employ other methods of ascertaining public perception, such as empirical evidence, and it instead relied strictly on characterizing license plates as government IDs based on Texas's statutory framework and the nature of the state's plates.

The Court's exposition of this issue controls here unless it is distinguishable from our case. But we find little ground for distinction. By way of example, in the excerpt from *Walker* below, we find that we can replace the word "Texas" with "Virginia" without doing any disservice to the facts of our case or Virginia's statutory scheme. In other words, what was true for Texas in *Walker* is true for Virginia here.

> Each [Virginia] license plate is a government article serving the governmental purposes of vehicle registration and identification. The governmental nature of the plates is clear from their faces: The State places the name "[VIRGINIA]" in large letters at the top of every plate. Moreover, the State requires [Virginia] vehicle owners to display license plates, and every [Virginia] license plate is issued by the State . . . .[2]
>
> [Virginia] license plates are, essentially, government IDs. And

---

[2] Omitted and not applicable here are the facts that "Texas also own[ed] the designs on its license plates," and that "Texas dictates the manner in which drivers may dispose of unused plates." *Walker*, 576 U.S. at 212 (internal citations omitted).

> issuers of ID "typically do not permit" the placement on their IDs of "message[s] with which they do not wish to be associated." Consequently, "persons who observe" designs on IDs "routinely—and reasonably—interpret them as conveying some message on the [issuer's] behalf."

*Walker*, 576 U.S. at 212 (internal citations omitted).

The only ground for distinction that we observe are the facts that "Texas also own[ed] the designs on its license plates," and that "Texas dictates the manner in which drivers may dispose of unused plates." *Walker*, 576 U.S. at 212 (internal citations omitted). Whether those facts are true for Virginia has not been briefed for the Court. But in any case, such facts are secondary to the thrust of the Supreme Court's reasoning: Where license plates are "essentially" government IDs, the public perceives the speaker of the plate as the government. Here, Virginia's personalized vanity plates "share enough of the prominent features of Texas's specialty plates to warrant the same conclusion." *Gilliam*, 2025 WL 617603, at *10. As the Commissioner notes, each of the Commonwealth's plates "contains the word 'Virginia' at the top and the default plate contains the state slogan 'Virginia is for Lovers' at the bottom." Dkt. 08 at 16. And "the Commonwealth strictly controls all other aspects of the license plates." *Id*. Virginia law dictates "the number, placement, and type of plate required for each vehicle as well as the how the plates are to be fastened, which vehicles must display a plate, and when a plate is not required on any vehicle." Dkt. 08 at 16; *see* Va. Code §§ 46.2-711 (number, placement, and type of license plate); § 46.2-712 (requirements for license plates generally); 46.2-715 (display of license plates); 46.2-716 (fastening plates to vehicles). These facts suggest that Virginia characterizes its license plates as government IDs no less than the state of Texas did, such that they must be identified in the public mind as government speech.

We recognize the paradox inherent in concluding that highly personalized license plates

10

speak for the state rather than the driver, [3] especially where the vanity plate message bears no understandable connection to governmental policy or, worse, forces the impression that the government is in fact "babbling prodigiously and incoherently." *Matal v. Tam*, 582 U.S. 218, 236 (2017). "But the dissenting opinion in *Walker* made the same appeal to common sense, to no avail." *Gilliam,* 2025 WL 617603, at *10 (citing *Walker*, 576 U.S. at 221–22 (Alito, J., dissenting)). The dissent in *Walker* criticized the majority for concluding that all of the "more than 350 varieties" of Texas specialty plates—ranging from plates in support of "numerous colleges and universities" to "the Masons, the Knights of Columbus, the Daughters of the American Revolution, a realty company, a favorite soft drink, a favorite burger restaurant, and a favorite NASCAR driver"—reflected "the views of the State of Texas and not those of the owners of the cars." *Walker*, 576 U.S. at 221–22 (Alito, J., dissenting)). How "[c]an this possibly be correct?" the dissent asked.

      Yet the binding conclusion of the Court was that the public invariably associates license plates with the government <u>because the public understands that license plates are government IDs</u>. Based overwhelmingly on that premise, the Court concluded that the second *Walker* factor weighed in favor of Texas. *Id*. at 212-213. Here, where vanity plates in Virginia are equally likely to be perceived as government IDs as specialty plates were in Texas, the second *Walker* factor must also weigh in favor of finding that Virginia's vanity plates are government speech.

      Other courts to reach a similar conclusion have confronted the paradox of this result and embraced the reality that two things can be true at once: the public knows that the driver customized the message on the license plate, and also knows that the message had to be approved by the government to be displayed at all. *See, e.g., Odquina v. City and Cnty. of*

---

[3]    *Kotler*, 2019 WL 4635168, at *7 ([I]t strains believability to argue that viewers perceive the government as speaking through personalized vanity plates.").

*Honolulu*, 2022 WL 16715714, at *9 (D. Haw. Nov. 4, 2022), *aff'd*, No. 22-16844, 2023 WL 4234232 (9th Cir. June 28, 2023) ("Although the general populace most certainly understands that vanity license plates are attributable in some respect to the vehicle owner, reasonable observers are also aware that vanity plates must be approved and printed by the government, and that they are used as official identification and registration numbers for the vehicle.").

Both things may be true as a matter of common sense. But only one is controlling as a matter of law: where license plates are government IDs, their message more likely constitutes government speech than private speech.

### 3. State Control of the Message

Finally, we consider the extent to which the Commonwealth "actively control[s]" or "shape[s]" the messages displayed on vanity plates. *Shurtleff*, 596 U.S. at 256. The Commissioner argues that Virginia employs "numerous and clear" efforts to exercise editorial control over vanity plates, to include (i) providing customers with guidelines on creating acceptable tags, (ii) maintaining an inventory of prohibited alphanumeric combinations, and (iii) accepting citizen complaints. Dkt. 08 at 17. The Commissioner emphasizes that DMV "long ago established license plate guidelines and a license plate committee to evaluate individual plates," and that "[t]he guidelines are published on DMV's website and available for all customers to review prior to requesting a specific license plate." Dkt. 08 at 17. At this stage of litigation, DMV's guidelines have not been introduced into the record, but the Court takes judicial notice of the publicly available guidelines.[4] The guidelines state that "DMV will not approve an

---

[4] Pursuant to Federal Rule of Evidence 201(b), the Court may judicially notice a fact that is not subject to reasonable dispute when it is either (1) generally known within the district court's jurisdiction, or (2) can be readily determined from an indisputably accurate source. *See* Fed. R. Evid. 201(b). The Fourth Circuit and courts within the Fourth Circuit "routinely take judicial notice of information contained on state and federal government websites." *U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

application for a personalized license plate" if the requested plate "may reasonably be seen by a person viewing the license plate" as (i) profane, obscene, or vulgar in nature, (ii) sexually explicit or graphic, (iii) excretory-related, (iv) used to describe intimate body parts or genitals, (v) used to condone or encourage violence, or (vi) used to describe illegal activities or illegal substances.[5]

Based on these facts, we have no doubt that the Commonwealth exercises ultimate editorial control over the messages displayed on vanity plates. The Commonwealth's current editorial bent, as promulgated in DMV's guidelines, largely reflects a concern for indecent speech. It does not reflect a broader array of policy concerns that might demonstrate the type of "selective receptivity" which supported a finding of government speech in cases like *Summum* and *Shurtleff*. But what matters is that the Commonwealth "maintains direct control over the messages conveyed" on its plates. *Walker*, 576 U.S. at 213. Two statutory provisions supply the Commissioner with plenary control and discretion over vanity plates: (1) "Every license plate and decal issued by the Department shall remain the property of the Department and shall be subject to be revoked . . . by the Department at any time," *see* Va. Code § 46.2-713, and (2) "The Commissioner may, in his discretion, reserve license plates with certain registration numbers or letters or combinations thereof for issuance to persons requesting license plates so numbered and lettered." *See* Va. Code § 46.2-726. Indeed, Plaintiff's very gripe in this litigation is that the Commissioner has "unfettered discretion" in controlling the messages on vanity plates. Dkt. 01 at 4. Even if the Commonwealth currently goes no further in its discretion than prohibiting various forms of speech for its indecency or offensiveness, the Commonwealth's editorial control and final approval authority allows Virginia "to choose how to present itself and its

---

[5] *Personalized Message Information*, VIRGINIA DEPARTMENT OF MOTOR VEHICLES, (last accessed May 28, 2025) available at https://www.dmv.virginia.gov/vehicles/license-plates/personalized-plate-policy.

constituency." *Walker*, 576 U.S. at 213.

Furthermore, it does not count against the state that the DMV originally approved and later revoked the plate at issue here. The dissenting opinion in *Walker* argued that Texas' specialty plates were less likely government speech since "Texas [did] not take care to approve only those proposed plates that convey messages that the State supports." *Walker*, 576 U.S. at 232, (Alito, J., dissenting). But again, that argument did not carry the day. Whether the Commonwealth uses its discretion in a manner that is lax or heavy-handed, inconsistent or calculating, does not refute the underlying fact of its discretion. Here, Mr. Whately's tags were approved and later revoked all the same, through the Commonwealth's statutory and regulatory process for shaping the messages displayed on its vanity tags. Accordingly, the third *Walker* factor weighs in favor of the Commonwealth.

\*\*\*

On balance, we conclude that the Commonwealth has shown that its vanity plates constitute government speech.

### B. Remaining First Amendment Issues

Because the Commonwealth's vanity plates are government speech, Plaintiff has no First Amendment interest in his license plate. Plaintiff's First Amendment arguments regarding overbreadth, vagueness, and viewpoint discrimination must therefore fail.

### C. Due Process Claim

Finally, Plaintiff's due process claim must be dismissed because the claim (i) fails the pleading standards of Rule 12(b)(6) and (ii) is substantively untenable. Although the complaint does not clarify whether the due process claim is procedural or substantive, Plaintiff's allegations do not plausibly state a claim under either branch of the Due Process clause.

To succeed on a **substantive** due process claim, Plaintiff must show that (1) he has a liberty or property interest; (2) the state deprived him of this liberty or property interest; and (3) "the state's action falls 'so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 862 (4th Cir. 2001) (quoting *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir.1995)). To succeed on a **procedural** due process claim, Plaintiff "must show that 'there exists a liberty or property interest which has been interfered with by the State' and that 'the procedures attendant upon that deprivation' were constitutionally insufficient." *Safety-Kleen*, 274 F.3d at 860 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Here, Plaintiff alleges that the Commissioner "[v]iolated" his "14th amendment right to Due Process," Dkt. 01 at 3, yet the complaint paints a picture of a highly reasonable administrative process. The complaint generally alleges that (i) the Commissioner used his statutory authority to revoke Plaintiff's license plate; (ii) Plaintiff sought an "Informal Administrative Hearing" on the revocation; (iii) a hearing was scheduled after some delay by DMV and Plaintiff appeared at the hearing; and (iv) one month later, Plaintiff received notice of "the Informal Conference Decision upholding the revocation" of his license plate. This suit followed. Dkt. 01 at 5-6.

But Plaintiff nowhere explains how these allegations plausibly support the claim that his due process rights were violated, either substantively or procedurally. Plaintiff is obligated to "provide the 'grounds' of his entitle[ment] to relief" beyond the use of "labels and conclusions,"

15

*Twombly*, 550 U.S. at 555, but here Plaintiff largely places a due process label on the same set of facts used for his First Amendment claims. Regarding substantive due process, Plaintiff falls well short of alleging that "the state's action falls 'so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" *Safety-Kleen*, 274 F.3d at 860. Regarding procedural due process, Plaintiff does not allege how he was "deprived of 'life, liberty, or property' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

As noted above, Plaintiff has no First Amendment interest in the license plate, he alleges no other liberty interest, and he does not allege that the license plate was a property interest deprived by inadequate governmental action. *See, e.g., N.C. Div. of Sons of Confederate Veterans, Inc. v. N.C. Dep't of Transportation*, 2022 WL 604173, at *8 (M.D.N.C. Mar. 1, 2022), *aff'd*, 2022 WL 17848950 (4th Cir. Dec. 22, 2022) ("In light of this court's holding that Plaintiff has no First Amendment rights in relation to North Carolina's specialty license plate program, . . . this court agrees that Plaintiff's procedural due process claim must fail because there is no recognizable liberty interest at issue.")

And "even assuming arguendo there was a recognizable liberty interest at stake," Plaintiff's procedural due process claim would still fail because the complaint does not plausibly allege that Virginia engaged in a "constitutionally deficient process" in deciding to revoke his license plate. *N.C. Div. of Sons of Confederate Veterans, Inc*, 2022 WL 604173, at *8. Plaintiff appeared at an administrative hearing which provided him an opportunity to be heard, and Plaintiff has not pled that he appealed the adverse ruling that followed. *See* Va. Code § 2.2-4026(A) ("Any . . . party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof by an appropriate and timely court action against the

16

agency or its officers or agents."). Where Plaintiff fails to exhaust his state remedies, "the availability of state procedures is fatal" to his Section 1983 procedural due process claim, since "[t]he constitutional violation actionable under § 1983 . . . is not complete unless and until the State fails to provide due process." *Mora v. The City Of Gaithersburg, MD*, 519 F.3d 216, 230 (4th Cir. 2008) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990)).

Because Plaintiff has not alleged facts that plausibly support a claim for violation of his substantive or procedural due process rights, his due process claim must be dismissed.

IV.  **Conclusion**

For the foregoing reasons, the Commissioner's motion to dismiss, Dkt. 07, is **GRANTED**. The Clerk of Court shall send a copy of this Memorandum Opinion to Plaintiff and all counsel of record and shall strike this case from the active docket of the Court.

Entered this  30th  day of May, 2025.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE